UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Christopher Loyd Ivey, | Civil No. 04-4102 (RHK/SRN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Whitney M. Colyer, Sean M. McNichols, Randal J. Landucci, Jeffrey L. Peterson, and Jane Doe, | |
| Defendants. | |

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on several motions. Specifically, Defendants Whitney M. Colyer, Randal J. Landucci, and Jeffrey L. Peterson (collectively "Minnesota Defendants") filed a Motion to Dismiss or for Summary Judgment (Clerk Doc. No. 7) in November 2004. Thereafter, Plaintiff Christopher Loyd Ivey filed a Motion to Amend the Complaint (Clerk Doc. No. 15), a Motion to Strike (Clerk Doc. No. 16), and a Motion for Appointment of Counsel (Clerk Doc. No. 17). This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, the Court recommends that the Minnesota Defendants' Motion be granted and Plaintiff's Motions be denied.

**I.     BACKGROUND**

In 1993, Plaintiff Christopher Ivey pleaded guilty to several burglary and criminal sexual conduct offenses in Carlton County, Minnesota. The Carlton County court sentenced

Plaintiff to 165 months in prison, but later reduced the sentence to 104 months after Plaintiff successfully challenged the imprisonment term to the Minnesota Court of Appeals. He entered prison in Minnesota in April 1993. See In the Matter of Christopher Loyd Ivey, 687 N.W.2d 666, 668 (Minn. Ct. App. 2004).

In June 1997, while Plaintiff was serving his sentence for the offenses committed in Minnesota, Plaintiff was extradited to Germany to face murder and attempted rape charges. In November 1997, a German court convicted Plaintiff of those offenses and sentenced him to eight years and six months in German prison. Id.

In May 1998, Plaintiff returned to Minnesota to complete his Minnesota sentence. He completed his prison term in November 1998, was released to the United States Marshal, and extradited to Germany on December 7, 1998, to complete his sentence for the murder and attempted rape offenses committed in Germany. Plaintiff was to be released from German prison and deported in November 2003. Id.

Although his supervised release term had expired by November 2003, Plaintiff was still under the supervision of the Minnesota Department of Corrections because a ten-year conditional release term, which was to expire in November 2008, had been imposed.[1] Id. Under the terms of his conditional release, Plaintiff was required to comply with the Intensive Supervised Release Program. As such, Plaintiff was to report directly to Bethel Work

---

[1] Plaintiff was originally sentenced to a ten-year supervised release term. However, Plaintiff filed a motion for post-conviction relief in March 2002, which challenged the length of the conditional release period. On June 9, 2004, the Carlton County court granted Plaintiff's motion and reduced the term of his conditional release to five years.

Release, a residential community program in Duluth, Minnesota. To effectuate Plaintiff's transfer, the Minnesota Department of Corrections arranged to meet Plaintiff at John F. Kennedy International Airport in New York City and escort him to the residential community program. It also issued an Order to Detain, which authorized law enforcement officers to apprehend and detain Plaintiff. (<u>See</u> Colyer Aff. Ex. D.) Thus, Plaintiff was required to follow all directives of the Minnesota Defendants while en route from New York City to the Bethel Work Release program.

Due to the Thanksgiving holiday, Minnesota Defendants were unable to arrange a flight from New York to Minnesota until November 25, 2003. Consequently, they made arrangements with the New York City Department of Corrections to confine Plaintiff in its jail during the night of November 24, 2003.

Plaintiff arrived at John F. Kennedy Airport on November 24, 2003. The Minnesota Defendants and Port Authority police met Plaintiff upon arrival. The officers explained to Plaintiff that he was not under arrest. Nevertheless, they placed Plaintiff in handcuffs until he arrived at the Port Authority Police Station where he was photographed and fingerprinted. Defendant Colyer then met with Plaintiff and explained the conditions of his conditional release.

Authorities then brought Plaintiff to the Queens County Jail in New York City, where Plaintiff was confined for one night. Plaintiff alleges that he was made to sleep on a concrete floor with no bedding in a cold holding cell. On the morning of November 25, 2003, Plaintiff appeared before the United States District Court for the Eastern District of New York. Both

Plaintiff and Defendant Colyer signed a waiver of extradition, which states that Plaintiff was being extradited to Minnesota because he fled from justice and violated his probation in Minnesota.[2]

Defendant Colyer then returned to Queens County Jail to check on the progress of transferring Plaintiff to the custody of the Minnesota Defendants. Plaintiff alleges that a New York corrections officer questioned the terms of the paperwork and that Defendant Colyer intimidated the corrections officer into transferring custody of Plaintiff to the Minnesota Defendants. However, Plaintiff does not challenge the authority of the Minnesota Defendants to escort him from New York to Minnesota.

Before departing the jail for La Guardia Airport, Defendant Landucci performed a strip search to confirm that Plaintiff carried no weapons or contraband. Plaintiff alleges that the search was conducted in front of two female New York corrections officers. Defendants Colyer and Landucci then escorted Plaintiff to Minnesota.

While Plaintiff was en route from Germany to the United States, the Carlton County Attorney filed a petition for civil commitment of Plaintiff as a sexually dangerous person and a sexual psychopathic personality and obtained an ex parte apprehend and hold order from the Carlton County District Court. Consequently, although the Minnesota Department of

---

[2] The Order to Detain issued by the Minnesota Department of Corrections explains that Plaintiff was convicted of criminal sexual conduct and that he should be detained for return to the custody of the Minnesota Department of Corrections for placement on supervised release. (Colyer Aff. Ex. D.) However, an affidavit submitted by Defendant Sean McNichols to the Queens County Criminal Court identifies Plaintiff as a fugitive from justice and states that Plaintiff violated his supervised release. (Compl. Ex. 3.)

Corrections agents initially planned to escort Plaintiff to the Bethel Work Release Program, Plaintiff was immediately turned over to the custody of two Carlton County officials when he arrived in Minnesota. Plaintiff is currently committed to the Minnesota Sex Offender Program in St. Peter, Minnesota.

Plaintiff commenced this civil rights action under 42 U.S.C. § 1983, alleging that the Minnesota Defendants and New York Department of Corrections officials illegally detained him on November 24, 2003 and conducted an illegal strip search of him on November 25, 2003. The Minnesota Defendants filed a Motion to Dismiss or for Summary Judgment based on Eleventh Amendment immunity. Thereafter, Plaintiff filed a Motion for Appointment of Counsel, a Motion to Strike, and a Motion to Amend the Complaint.

## II.   DISCUSSION

### A.   Motion for Appointment of Counsel

Plaintiff has filed a motion asking the Court to appoint counsel to represent him in this matter. Pro se litigants do not have a constitutional or statutory right to counsel in civil cases. Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998). Rather, the appointment of counsel in cases such as this one is a matter committed to the discretion of the trial court. McCall v. Benson, 114 F.3d 754, 756 (8th Cir. 1997); Mosby v. Mabry, 697 F.2d 213, 214 (8th Cir. 1982). Among the factors the Court should consider in determining whether to appoint counsel are the factual complexity of the case, the ability of the litigant to present his claims, the complexity of the legal issues, and whether both the litigant and the Court would benefit from having the litigant represented by counsel. McCall, 114 F.3d at 756; Johnson v.

Williams, 788 F.2d 1319, 1322-23 (8th Cir. 1986).

The Court finds that neither the facts nor the legal issues involved in this case are so complex as to warrant appointment of counsel. It appears to the Court that Plaintiff has the threshold ability to articulate his claims and to argue his positions, has previous litigation experience, and can communicate effectively with the Court. Moreover, the Court is presently satisfied that appointment of counsel would not substantially benefit the Court or Plaintiff. Therefore, the Court recommends that the Motion for Appointment of Counsel be denied.

**B.     Motion to Strike**

Plaintiff seeks to strike exhibits attached to the affidavit of Angela Helseth, the Assistant Attorney General who represented Carlton County in the civil commitment proceedings against Plaintiff. The exhibits include the petition for civil commitment, as well as orders relating to Plaintiff's civil commitment. (See Helseth Aff. Exs. A-D.) Plaintiff contends that these exhibits unduly prejudice him. The Court disagrees and finds that the exhibits are relevant to explain what transpired during Plaintiff's transport to Minnesota in November 2003. Because the probative value of the exhibits outweighs any prejudice to Plaintiff, the Court recommends that the Motion to Strike be denied. See Fed. R. Evid. 402.

**C.     Plaintiff's Motion to Amend the Complaint; Defendant's Motion to Dismiss or for Summary Judgment**

In response to Defendants' Motion to Dismiss or for Summary Judgment, Plaintiff filed a Motion for Leave to Amend the Complaint. Specifically, Plaintiff seeks to add more factual details relating to his claims, to assert claims against Defendants in their individual capacities,

and to add alleged constitutional violations not cited in the original Complaint. As explained below, leave to amend is futile because the proposed Amended Complaint fails to state a claim upon which relief may be granted.[3] Thus, it is recommended that the Motion to Amend the Complaint be denied. See Grandson v. Univ. of Minn., 272 F.3d 568, 575 (8th Cir. 2001) (leave to amend should be denied if the proposed amended pleading is futile).

1. Official Capacity

The original Complaint contains no clear statement that the Minnesota Defendants are being sued in their personal capacities. The Court therefore interprets the original Complaint as including only official-capacity claims. Murphy v. State of Ark., 127 F.3d 750, 754-55 (8th Cir. 1997).

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subject of any Foreign State." U.S. Const. Amend. XI. Absent a waiver, the Eleventh Amendment protects the state and its officials acting in their official capacities from § 1983 liability. See Kentucky v. Graham, 473 U.S. 159, 169 (1985); Murphy, 127 F.3d at 754. No evidence exists that the State of Minnesota has waived its Eleventh

---

[3] Whether to grant leave to amend is within this Court's sound discretion. Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund, 800 F.2d 742, 749 (8th Cir.1986). "Although amendment of a complaint should be allowed liberally to ensure that a case is decided on its merits, . . . there is no absolute right to amend." Ferguson v. Cape Girardeau County, 88 F.3d 647, 650-51 (8th Cir.1996); Fed. R. Civ. P. 15(a) (courts shall grant leave freely "when justice so requires"). Moreover, leave to amend is improper if the proposed amendment does not state a claim on which relief may be granted. Holloway v. Dobbs, 715 F.2d 390, 392-93 (8th Cir.1983).

Amendment immunity. Therefore, to the extent that Plaintiff seeks monetary damages for actions taken by the Minnesota Defendants in their official capacities, those claims are barred by the Eleventh Amendment.

    2.    <u>Individual Capacity</u>

The proposed Amended Complaint asserts § 1983 claims against the Minnesota Defendants in their individual capacities. In particular, Plaintiff alleges that the Minnesota Defendants violated his constitutional rights by unlawfully arresting and detaining him. In addition, Plaintiff contends that Defendant Colyer signed a false document and conspired with New York corrections officials to inaccurately identify Plaintiff as a "fugitive from justice" who violated the terms of his supervised release. Finally, Plaintiff alleges that Defendant Landucci conducted an unlawful strip search of Plaintiff and thereby subjected Plaintiff to cruel and unusual punishment.

    a.    <u>Seizure and Detention</u>

Plaintiff claims that the seizure and detention violated his right to be free from unreasonable searches and seizures. To determine whether the force used to effect a particular seizure is reasonable under the Fourth Amendment, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989) (internal quotations and citations omitted). Courts must consider the totality of the circumstances of each case, including the severity of the crime at issue, whether the individual poses an immediate threat to the safety of the officers or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight. Id. at 397.

When Plaintiff returned to the United States on November 24, 2003, he was on conditional release and remained under the jurisdiction of the Minnesota Department of Corrections. Accordingly, the Minnesota Defendants had a statutory obligation to escort Plaintiff from his release to a residential halfway house. Minn. Stat. § 244.05, subd. 1c. Inherent in this duty is the authority to use reasonable force to effectuate the escort in a secure manner. See Daly v. Pederson, 278 F. Supp. 88, 91-92 (D. Minn. 1967) (Neville, J.) (detention lawful when made pursuant to the dictates of a properly issued warrant). Handcuffing Plaintiff and escorting him to the Queens County Jail was reasonable to prevent Plaintiff's release from the custody of German authorities into a crowded international airport and major metropolitan area without any safeguard to ensure his return to Minnesota. See Muehler v. Mena, 125 S. Ct. 1465, 1468-71 (2005) (officers acted reasonably by detaining occupant in handcuffs for two to three hours while searching premises). It was also reasonable to minimize the risk of harm to the officers and to the general public. Id. at 1470. Thus, the Minnesota Defendants' use of handcuffs to effectuate Plaintiff's escort from the airport to the Queens County Jail was reasonable because the governmental interests outweighed the marginal intrusion to Plaintiff.

Plaintiff also complains that his overnight detention in the Queens County Jail violated his constitutional rights. However, this infringement on Plaintiff's liberty was reasonable under the circumstances. The Minnesota Defendants were required to ensure that Plaintiff returned to Minnesota to commence his intensive supervised release, but were unable to secure a flight from New York to Minnesota until November 25, 2003. Under these

circumstances, the Minnesota Defendants' decision to arrange for an overnight detention in the Queens County Jail was reasonable.

Likewise, the detention did not violate Plaintiff's constitutional rights under the Fourteenth Amendment. This case is unlike Davis v. Hall, 375 F.3d 703, 708 (8th Cir. 2004), where prison officials detained the plaintiff for fifty-three days in the absence of a court order. Likewise inapposite is Young v. City of Little Rock, 249 F.3d 730, 736 (8th Cir. 2001), where prison officials mistakenly detained an innocent individual, chained her to five or six other female inmates, and strip searched her in front of five or six other people after the court ordered her release. In this case, the Minnesota Defendants acted pursuant to the Order to Detain, which provided Minnesota Defendants with the incidental authority to effect the escort in a secure manner. As such, it is reasonable that Defendants detained Plaintiff in the Queens County jail until they could complete the transfer to Minnesota.

      b.    False Statements

Plaintiff claims that Defendant Colyer conspired with New York correctional officers and signed the extradition waiver, which falsely stated that Plaintiff fled justice and violated the terms of probation. Plaintiff also claims that Defendant Colyer coerced a New York correctional officer into releasing him to her authority for the purpose of escort. Notably, however, Plaintiff does not challenge Defendant Colyer's authority to detain and escort Plaintiff. Thus, even assuming that the alleged wrongful conduct occurred, Plaintiff has failed to state a claim that constitutes a violation of his federal or constitutional rights. See Schwartz v. Pridy, 94 F.3d 453, 457 (8th Cir. 1996) (misrepresentation in search warrant application did

not result in violation of Fourth Amendment because search was valid even without a warrant).

      c.     Search

Plaintiff claims that the unclothed visual body search violated his Eighth Amendment right to be free from cruel and unusual punishment. The Court employs a reasonableness test to determine the legality of a strip search, balancing the need for the particular search against the invasion of personal rights that the search entails. In doing so, the Court considers the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it was conducted. Bell v. Wolfish, 441 U.S. 520, 559 (1979). Under this standard, prison officials may require all inmates, including pretrial detainees, to submit to a visual body cavity inspection after contact outside the institution. Id.[4] Likewise, prison officials may conduct a visual body cavity search before taking an inmate outside the confines of prison. Goff v. Nix, 803 F.2d 358, 359 (8th Cir. 1986).

The Minnesota Defendants had legitimate interests in ensuring that Plaintiff was not concealing contraband or otherwise able to compromise the security of the transportation officers and the public. Because the search was a reasonable response to legitimate security concerns, the search did not violate the Fourth Amendment. See Bell, 441 U.S. at 558-61. Likewise, the mere fact that the search was conducted in front of female guards does not constitute cruel and unusual punishment under the Eighth Amendment. See Johnson v. Phelan,

---

[4] In Bell, the Supreme Court noted the serious security problems with which prison administrators must deal and commented upon the smuggling of contraband, including weapons and drugs, into prisons by inmate attempts to secrete those items in body cavities. 441 U.S. at 559.

69 F.3d 144, 150-51 (7th Cir. 1995) (strip search of a male prisoner in front of female officers, if conducted for a legitimate penological purpose, fails to rise to an Eighth Amendment violation); Michenfelder v. Sumner, 860 F.2d 328, 334 (9th Cir. 1988) (fact that female correctional officers might be able to view strip searches of male prisoners did not render search policy violative of prisoners' privacy rights); see also Merritt-Bey v. Salts, 747 F. Supp. 536, 539 (E.D. Mo. 1990) (plaintiff's constitutional rights were not violated because a female prison guard was present during visual body cavity search).  Although Plaintiff alleges that the search was "demoralizing," he fails to make any allegations that could lead a fact finder to conclude that Defendant Landucci conducted the search for harassment or punishment purposes.  Cf. Calhoun v. Detella, 319 F.3d 936, 940 (7th Cir. 2003) (male plaintiff alleged that female corrections officers made ribald comments, sexually explicit gestures, and made the plaintiff perform sexually provocative acts during the search).  Because Plaintiff fails to allege that the search was conducted for anything other than a legitimate and identifiable purpose, he fails to state a claim upon which relief may be granted.

      3.      Qualified Immunity

Even if Plaintiff's claims arose to constitutional violations, the claims fail because qualified immunity applies.  The Minnesota Defendants are entitled to qualified immunity unless they violated Plaintiff's clearly established constitutional rights.  Schwartz, 94 F.3d at 457; see also Crow v. Montgomery, 403 F.3d 598, 601 (8th Cir. 2005).  For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Bradley v. Ark. Dep't of

Educ., 301 F.3d 952, 955 (8th Cir. 2002) (citation omitted).

The Minnesota Defendants are entitled to qualified immunity because Plaintiff fails to assert claims that demonstrate a violation of a clearly established constitutional right. To the contrary, the record shows that the Minnesota Defendants were acting or believed they were acting pursuant to a legitimate Order to Detain and in accordance with Minnesota law. When Plaintiff returned to the United States in November 2003, he was required to meet "any conditions the Commissioner of Corrections considers appropriate." Minn. Stat. § 609.109, subd. 7(b). In addition, the Minnesota Defendants were authorized to subject Plaintiff to the following conditions:

> unannounced searches of the inmate's person, vehicle, or premises by an intensive supervision agent; compliance with court-ordered restitution, if any; random drug testing; house arrest; daily curfews; frequent face-to-face contacts with an assigned intensive supervision agent; work, education, or treatment requirements; and electronic surveillance.

Minn. Stat. § 244.05, subd. 6.

Plaintiff fails to allege that the Minnesota Defendants exceeded their statutory authority to detain and escort Plaintiff. Indeed, the allegations in the Complaint and proposed Amended Complaint support a finding that the Minnesota Defendants reasonably believed that their actions relating to Plaintiff's detention and escort was lawful under Minnesota law. Therefore, Defendants are entitled to qualified immunity. Furthermore, the claims based on allegations that Defendant Colyer falsely testified to the Queens County Court also fail because Defendant Colyer is immune from civil liability based on her testimony in the judicial proceeding. See Briscoe v. LaHue, 460 U.S. 325, 335-45 (1983).

### III.     CONCLUSION

Neither the Complaint nor the proposed Amended Complaint state a claim upon which relief may be granted.  Accordingly, based on all the files, records and proceedings herein, **IT IS RECOMMENDED** that:

1.  The Motion to Dismiss filed by Defendants Whitney M. Colyer, Randal J. Landucci, and Jeffrey L. Peterson (Clerk Doc. No. 7) be **GRANTED**;

2.  Plaintiff's Motion for Leave to File an Amended Complaint (Clerk Doc. No. 15) be **DENIED**;

3.  Plaintiff's Motion to Strike Affidavit (Clerk Doc. No. 16) be **DENIED**;

4.  Plaintiff's Motion to Appoint Counsel (Clerk Doc. No. 17) be **DENIED**; and

5.  All claims asserted against Whitney M. Colyer, Randal J. Landucci, and Jeffrey L. Peterson be **DISMISSED WITH PREJUDICE**.

Dated: June 20, 2005

                                           s/Susan Richard Nelson
                                           Susan Richard Nelson
                                           United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by July 5, 2005**,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to ten pages.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court

of Appeals.